UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CHRISTOPHER JEROME DAVIS                                                        PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 1:07CV1123-HSO-RHW

CHRISTOPHER B. EPPS et al                                                        DEFENDANT

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

Before the Court is Christopher Jerome Davis' petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Davis is serving a life sentence without possibility of parole following a jury trial and capital murder conviction. In his petition, he argues that (1) his conviction was based on constitutionally insufficient evidence; and (2) he is entitled to a new trial because of prosecutorial misconduct during closing argument.

## Factual and Procedural Background

On July 18, 2000, Christopher Davis drove past George County Deputies Casey Mitchell and Richard Solomon at a high rate of speed. The deputies followed Davis' pickup truck in their patrol car. Davis led the deputies on a high speed chase through George County and into Jackson County. Law enforcement officers attempted on at least three occasions to end the chase by using firearms and patrol cars. Davis managed to elude them each time and sped into Jackson County, where officers were positioned to intercept him. As Davis approached the Jackson County officers, Officer Charles Braden fired a shotgun at Davis' truck. The pickup then veered into a nearby parking lot where it collided with Jackson County Deputy Bruce Evans' patrol car. Deputy Evans was standing behind his vehicle with flashing lights activated when the truck collided with his car. The impact caused the patrol car to skid several feet and crushed Deputy Evans beneath it resulting in Deputy Evans' death.

A jury convicted Davis of capital murder for the death of Deputy Evans. The judge sentenced Davis to life in prison without the possibility of parole. The Mississippi Court of Appeals affirmed the conviction and sentence. *Davis v. State*, 914 So.2d 200 (Miss. Ct. App. 2005). Both the Mississippi Supreme Court and the United States Supreme Court denied Davis' petitions for writ of certiorari. *See Davis v. State*, 921 So.2d 344 (Miss. 2005); *Davis v. Mississippi*, 549 U.S. 856 (2006). Davis exhausted his state remedies for post-conviction relief and filed a timely § 2254 petition for writ of habeas corpus, which is now before this Court.

## Law and Analysis

### Standard of Review

The issues presented in the instant petition (with one exception noted below) were presented to the Mississippi Court of Appeals and to the Mississippi Supreme Court. Accordingly, this Court will follow the provisions of 28 U.S.C. § 2254(d), which provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When reviewing state court habeas decisions, a federal court employs a highly deferential standard to evaluate state-court rulings. *Bell v. Cone*, 543 U.S. 447, 455 (2005).

### Issue 1: Sufficiency of the Evidence

Davis argues that his conviction should be overturned because there was constitutionally

2

insufficient evidence to find him guilty beyond a reasonable doubt.  In assessing the sufficiency of the evidence to support a state conviction, a federal habeas court must inquire, after viewing the evidence in a light most favorable to the prosecution, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996).  This Court is required to accept all credibility choices and conflicting inferences in favor of the jury's verdict. *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005).  This requirement encompasses both direct and circumstantial evidence.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990); *see also Jackson*, 443 U.S. at 324-25.  Witness credibility determinations are within the province of the jury and it "retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001).  On habeas review, the court defers to the trier of fact in resolving conflicts requiring credibility determinations.  *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).

The State indicted Davis for capital murder on theories of deliberate design and "depraved heart".  Section 97-3-19(1) of the Mississippi Code defines deliberate design murder as the unauthorized killing of a human being done with deliberate design to cause death, and "depraved heart" murder as an unauthorized killing of a human being done in the commission of an act eminently dangerous to others and evincing a depraved heart without any premeditated design to cause death.  The murder rises to the level of "capital murder" if a peace officer is killed without authority, while the officer is acting in his official capacity, and the accused has knowledge that the victim is a peace officer. The Mississippi Supreme Court has noted that "[a]lthough the structure of Section 97-3-19(a) and (b) appears to create two distinct categories

of murder, Mississippi case law has established that deliberate design murder and depraved heart murder have coalesced into one." *Chatman v. State*, 761 So.2d 851, 854 (Miss. 2000).

In a similar factual scenario, the Mississippi Court of Appeals upheld a conviction for capital murder under Miss. Code Ann. § 97-3-19 that the defendant challenged on sufficiency grounds. *See White v. State*, 964 So.2d 1181 (Miss. Ct. Appeals 2007). In *White*, the defendant fled from police and continued a high speed pursuit at night. *Id.* at 1183. During this pursuit, a police officer positioned his marked patrol car, with flashing blue lights, to block defendant's escape. The defendant, without slowing, slammed his vehicle into the officer and his patrol car, resulting in the officer's death. *Id.* The defendant argued that it was too dark to see; therefore, he could not have had the requisite knowledge that the victim was a police officer, thereby negating a necessary element for capital murder. *Id.* at 1187-88. The state court held that the evidence was sufficient to allow a rational juror to conclude that the defendant knew that the patrolman was a police officer at the moment of impact. *Id.* at 1188. Although there are some notable differences between the facts in *White* and the instant case, the *White* opinion helps to elucidate the application and interpretation of the elements of capital murder pursuant to § 97-3-19.

In considering Davis' sufficiency-of- the-evidence claim, the Mississippi Court of Appeals pointed to eyewitness testimony whose credibility the jury resolved in favor of conviction. Without elaboration, the court held that "[t]here is in the record substantial credible evidence upon which such a verdict could be based." *Davis*, 914 So.2d at 207. The undersigned finds that the state court's determination was not contrary to nor did it involve an unreasonable application of Federal law as determined by the Supreme Court. Likewise, the state court's

4

decision was not an unreasonable determination of the facts in light of the evidence presented.

In his petition, Davis focuses on the weight of the evidence, in particular the dearth of evidence establishing his intent to kill a police officer. Davis argues that the evidence demonstrates that he accidentally, rather than deliberately, caused the death of Deputy Evans. He asserts that it was dark at the time of the incident, which in conjunction with the flashing lights of the patrol car would have made it difficult for Davis to see Deputy Evans standing behind his patrol car. Deputy Robert Blocker stated that Davis turned "inadvertently" into the parking lot and that the truck began to fishtail before impact. Deputy Charles Braden stated that the truck went sideways into the parking lot. Joe Karcharos testified that he heard skidding tires and saw Davis' truck spinning prior to the impact. There were two bullet holes in the tire of Davis' truck and fresh rim damage suggesting that the tire was flat before impact. The side of Davis' truck collided with Evans' patrol car rather than hitting it head on. Davis argues from this evidence that the only rational conclusion is that Davis lost control of his truck and accidentally struck Deputy Evans' patrol car.

Although there is more than one reasonable hypothesis to deduce from the evidence presented at trial, the undersigned nevertheless finds that there was sufficient evidence for a rational trier of fact to have found Davis guilty beyond a reasonable doubt of the essential elements of the crime of capital murder. *See Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992). Deputies Solomon and Mitchell testified that Davis led them on a high speed chase, at times reaching speeds of up to 95 miles per hour. Davis constantly crossed into the oncoming lane of traffic, refused to allow the officer to pass him, ran at least one stop sign, and forced civilian vehicles onto the shoulder of the road. Deputy Mitchell testified that in the moments prior to the

5

impact with Deputy Evans' patrol car, he did not see Davis' brake lights engaged. Deputy Braden, an eyewitness to the events, testified that at no time was Davis not in control of the truck; the parking lot where the impact occurred was well lit; and Deputy Evans and his marked police car were clearly visible. Deputy Blocker testified that Davis took an immediate left turn into the parking lot, that Davis appeared to be in control of the truck at all times prior to the impact, and that he did not see Davis' brake lights illuminate. Master Sergeant David Kenny, who presented expert testimony regarding accident reconstruction and analysis, asserted several times that there was no physical evidence to suggest that the punctured left tire on Davis' truck would have affected his control over the vehicle.

Although the undersigned recognizes that there may have been conflicting evidence subject to differing interpretations, a rational trier of fact could have found Davis guilty of the crime of capital murder beyond a reasonable doubt based either on deliberate design or depraved heart. Based on the foregoing, the undersigned finds that the evidence was constitutionally sufficient to sustain Davis' conviction for capital murder.

**Issue 2: Prosecutor's Closing Argument**

Davis identifies four separate instances of alleged improper commentary by the prosecution during closing argument: (1) the prosecution's first-person narrative constituted a comment on Davis' decision not to testify; (2) the prosecutor gave personal assurances that Davis was guilty; (3) the prosecutor stated that defense counsel "admitted" that the wreck was not an accident and therefore conceded that Davis was guilty of manslaughter; and (4) the prosecution made comments discrediting defense counsel and bolstered his own credentials by referring to his training and experience in the field of criminal law.

6

To establish prosecutorial misconduct based on remarks made during trial, the relevant inquiry is whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Geiger v. Cain*, 504 F.3d 303, 308 (5th Cir. 2008). The petitioner is required to show "that the [prosecutor's] misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Id.* It is not sufficient for habeas relief that the prosecutor's comments are simply "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The statements must render the trial fundamentally unfair. A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

### (1) First Person Narrative

Davis argues that the prosecution's first-person narrative, where the prosecutor addressed the jury as if he were Christopher Davis, was an implicit comment on Davis' decision not to testify at the criminal trial, and thereby a violation of his Fifth Amendment right against self-incrimination. At the outset of his closing statement, the prosecutor made the following excerpted argument to the jury:

> My name is Christopher Davis. . . . I made a conscious and deliberate decision. . . I made a conscious decision that I was going to avoid capture at all costs. As a matter of fact, I was going to avoid capture even if it caused injury or death to members of the community. Now that's the theme of this case. I will not be stopped. I will avoid capture. I will do whatever it takes to keep from being apprehended. . . And then we travel a very short distance into Jackson County. And I have made up my mind, I am going to avoid capture at all costs. And Chuck Braden fires a slug of a shotgun shell, which is not what hit that tire. And I see not Chuck Braden, the person that fired the shotgun shell, but there, behind his

7

> Crown Victoria, stood the father of two young children and a young wife and a car that had written on it, "To protect and serve." . . . And when I hear the shotgun blast of Chuck Braden, I am going to do what I did every time that I was confronted by law enforcement, I am going to be aggressive. And I am going to slam into that car and, for the fourth time, I attempted to avoid capture at all costs.

The Fifth Amendment prohibits the prosecution from commenting directly or indirectly on a defendant's failure to testify. *United States v. Borchardt*, 809 F.2d 1115, 1119 (5th Cir. 1987). The right to testify, or elect not to testify, is a fundamental right personal to the defendant. *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007). To rise to the level of denial of the Fifth Amendment right to remain silent, the prosecutor's manifest intent in making the remark must have been to comment on the defendant's silence, or the character of the remark must have been such that the jury would "naturally and necessarily construe it as a comment on the defendant's silence." *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999). If the prosecutor did not have the requisite intent under the first prong, then the Court looks to "whether the jury *necessarily* would have" viewed the prosecutor's remarks as a comment on the defendant's failure to testify. *Id.*

In this case, the prosecution did not comment directly on Davis' failure to testify, nor does Davis so contend; therefore, the question before the undersigned is whether the jury necessarily would have viewed the prosecutor's remarks as a comment on his failure to testify. In analyzing this issue on appeal, the Mississippi Court of Appeals, cited to Mississippi case law. *See Davis*, 914 So.2d at 207-08 (citing *Howell v. State*, 860 So.2d 704 (Miss. 2003)(holding that the question on appeal is "whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created"); *Robinson v. State*, 733 So.2d 333 (Miss. Ct.

App. 1998) (holding that general rule is to allow attorneys wide latitude in making closing arguments)). The Court of Appeals then held that "[g]iven the evidence presented, this Court cannot say that the verdict was occasioned by unjust prejudice." *Id.* at 208.

The prosecutor made statements in a dramatic, first-person narrative format regarding the facts and evidence presented at trial; however, Davis does not suggest that the inferences and conclusions in that portion of the prosecution's narrative were not reasonably drawn from the evidence at trial, namely that Davis would avoid capture at all costs. *See United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009)("A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from the evidence."); *United States v. Hatch*, 926 F.2d 387, 395 (5th Cir. 1991). Rather, Davis merely asserts that the use of the first-person narrative was inherently a statement on his failure to testify. The undersigned concludes that if the prosecutor had changed the first-person pronoun into the third-person pronoun, or referred to Davis by name rather than in the first person, the closing argument would have been virtually identical (albeit less dramatic) and free from the error now alleged by Davis. Davis has not cited to any case law to support his contention that the use of the first-person pronoun renders unconstitutional an otherwise acceptable closing argument where the prosecutor drew reasonable conclusions and inferences from the evidence presented at trial. The undersigned does not find that the State court's decision was an unreasonable application of federal law as determined by the Supreme Court.

Moreover, the trial court instructed the jury prior to closing arguments that the remarks and statements of counsel are "not evidence", but rather designed to "assist [the jury] in understanding the evidence and applying the law." The trial court also instructed the jury that it

9

may not give any consideration or make inferences or conclusions from the fact that Davis did not testify. The prosecution gave its closing argument, including the challenged narrative, soon after these instructions were read to the jury.

### (2) Personal Assurances of Guilt

During closing argument, the prosecutor stated that "it was Jackson County where this collision occurred, where this death occurred, where this capital murder occurred. And it's nothing less than capital murder, I can assure you of that." Even assuming arguendo that this comment was improper, Davis has failed to demonstrate that absent this comment there is a reasonable probability that the verdict might have been different.

### (3) Admission of Manslaughter

During closing statement, the prosecutor stated that "by admitting that his client is guilty of manslaughter, [defense counsel] has told you that shooting out the tires did not cause this wreck." Even assuming arguendo that this was a mischaracterization of defense counsel's stated position, the jury did not convict Davis of manslaughter but rather convicted him of capital murder. Even if the jury believed the State's assertion that Davis conceded guilt on the lesser charge of manslaughter, the jury still had to find all of the elements of the crime of capital murder beyond a reasonable doubt. The undersigned does not find any prejudice resulting from the statement because it cannot be inferred that the jury imputed guilt of capital murder based on the prosecutor's statement about manslaughter. Davis has failed to demonstrate a reasonable probability that the verdict might have been different.

### (4) Discrediting Defense Counsel

The Court finds that the final comments relating to prosecutorial misconduct were not

10

submitted to the state court for review, and thus are procedurally barred. Although Davis appealed the general issue of prosecutorial misconduct and certain improper statements made during closing argument, he did not present these specific comments to the state court prior to federal habeas review.

A petitioner's failure to present claims to the proper state court creates a procedural default. *See Magourik v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998). Federal courts are barred from reviewing procedurally defaulted claims. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). If the petitioner fails to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, then the claims are procedurally defaulted for purposes of federal habeas review. *Id.* Davis does not dispute that these specific comments were not exhausted in state court, nor that they would be barred from review by the state court at this time. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Moreover, he does not identify any cause and prejudice or fundamental miscarriage of justice that would justify this Court's consideration of the unexhausted claims. *See Morris v. Dretke*, 413 F.3d 484, 491-92 (5th Cir. 2005). Hence, the undersigned finds that these comments by the prosecutor are procedurally defaulted and barred from habeas review.

Finally, when looking at the entire collection of alleged improper remarks by the prosecution, Davis has not demonstrated a reasonable probability that the outcome of the trial would have been different or that the prosecutor's remarks made the trial fundamentally unfair. As explained in the discussion of the sufficiency of evidence, the evidence of Davis' guilt was not insubstantial.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Davis' § 2254 petition for writ of habeas corpus be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 27th day of May, 2010.

s/ *Robert H. Walker*
UNITED STATES MAGISTRATE JUDGE